OPINION OF THE COURT
Joseph P. Kuszynski, J.
Plaintiff Lincoln First Bank moves pursuant to CPLR 3212 *468 for summary judgment against the defendant Herbert Carlson. The third-party defendant Marine Midland Bank moves pursuant to CPLR 3211 (subd [a], par 7) to dismiss the third-party complaint against it upon the grounds it does not state a cause of action.
It appears that on June 6, 1978, defendant purchased a ring by telephone from Constantine Gems of Cleveland, Ohio and charged the amount of the purchase, in the sum of $379 to his Visa Charge Card account with plaintiff Lincoln.
According to his answer, defendant returned the ring to the merchant in Cleveland, Ohio on June 16, 1978 and received a credit slip from the store on June 21, 1978. The credit slip, however, showed defendant’s identification number to be his Master Charge Card account with the third-party defendant Marine, rather than his Visa account with plaintiff, Lincoln.
Defendant states in his answering affidavit that the first statement he received from Visa after obtaining the credit slip was on about July 26, 1978, and it showed no credit for the ring. He presumed, he states, that it was because the attendant paperwork had not been processed. Mr. Carlson claims that afterward he moved and heard nothing from Visa until his wife was contacted by phone by plaintiff on September 16, 1978. A letter to plaintiff from the Carlson’s postmarked September 17, 1978 contained the purchase and credit slips.
The next apparent contact between the parties was on December 11, 1978, when a letter from plaintiff advised defendant that his "time limit * * * has expired”, referring to the "Federal Truth in Lending Act”, which is section 1666 of title 15 of the United States Code. The letter also suggested he contact Constantine Gems "regarding the non-receipt of credit”. According to the answering papers, Mr. Carlson did attempt to contact Constantine Gems, only to find that the company had since gone bankrupt. Further attempts by defendant to secure an amended credit from Constantine Gems failed.
Thereafter in October, 1979 plaintiff Lincoln commenced an action against the defendant Carlson under the terms of the charge card agreement. Defendant served an answer asserting as an affirmative defense the merchant’s failure to issue a credit slip to his Visa account for a returned purchase.
Defendant then commenced a third-party action against Marine Midland Bank for indemnification asserting that because the Cleveland merchant had placed his Master Charge *469 account number on a credit slip that Marine should indemnify.
Plaintiff Lincoln First Bank’s motion for summary judgment is grounded in the main on two sections of the Federal Truth in Lending Act dealing with credit billing, viz., sections 1666 and 1666i of title 15 of the United States Code.
Plaintiff maintains that subdivision (a) of section 1666 placed an obligation upon defendant to notify plaintiff of the billing problem in writing within 60 days of defendant’s receipt of the account statement reflecting the billing error. Counsel for the bank contends that the only notice plaintiff received was on September 16, 1978 when one of its employees contacted Mrs. Carlson by telephone. The fact that plaintiff received copies of the purchase and credit slips from defendants in a letter postmarked September 17, 1978 is, however, not disputed.
This court finds that sufficient and timely notice of the situation might be found to have been received by the plaintiff. Viewed in a light most favorable to the defendant, Mr. Carlson’s first statement from plaintiff which reflected the billing error was received on July 26, 1978, less than 60 days prior to the September 16 telephone conversation and the September 17 letter. Depending on facts adduced at trial, a trier of fact could well find that the plaintiff waived its requirement of full written notice in only requesting copies of the purchase and credit slips, or that in fact the slips were sufficient written notice.
Moreover, timely notice by defendant, under subdivision (a) of section 1666 required the bank to take steps, within certain specific time limits, to rectify the billing error. (Neal v United States, 402 F Supp 678.) If plaintiff is found not to have met such requirements, it forfeits its right to collect $50 of any amount owing it by the defendant. (US Code, tit 15, § 1666, subd [e].)
Plaintiff’s second ground is based on section 1666i of title 15 of the United States Code which reads in pertinent part, "a card issuer who has issued a credit card to a cardholder pursuant to an open end consumer credit plan shall be subject to all claims (other than tort claims) and defenses arising out of any transaction in which the credit card is used as a method of payment or extension of credit if * * * (3) the place where the initial transaction occurred was in the same State as the mailing address previously provided by the cardholder *470 or was within 100 miles from such address”. The bank maintains that since Cleveland is out of New York State and more than 100 miles from Jamestown, New York, the defendant is precluded from asserting any defense in the present action.
A review of Federal cases indicates that no interpretation of section 1666i has been made to date. To this court’s mind, the statement that a card issuer is subject to all defenses if a transaction occurred less than 100 miles from the cardholder’s address, does not automatically presume a cardholder to give up all his defenses should the transaction take place at a distance of greater than 100 miles from the mailing address.
While the line between which defenses may or may not be asserted by a credit cardholder living more than 100 miles from the place of the purchase has not yet been clearly drawn, it would seem that the cardholder can clearly assert a defense which arose due to an alleged failure of the card issuer itself to comply with the statutory requirements of section 1666 of title 15 of the United States Code to correct an obvious billing error.
While it may be found that plaintiff was in fact not culpable in failing to correct the error in light of the date it received defendant’s notification and the time limits for response contained in section 1666 of title 15 of the United States Code, this is a factual question for a trier of fact to determine.
As for the companion motion made by the third-party defendant, Marine, to dismiss the third-party complaint against it upon the ground it does not state a cause of action, it is granted. There is claim on the part of the defendant Carlson that Marine had received the credit from the merchant on defendant’s Master Charge account and denied him its use.
It is set forth on behalf of Marine that in June, 1979 about one year after defendant had received the improperly issued credit slip and after the bankruptcy of Constantine Gems, he did contact Marine "about a possible credit to this Master Charge”. Marine did not credit defendant’s account because defendant’s Master Charge account was never charged for the purchase for which he sought a credit, no check was received by Marine from the merchant for the purchase for which a credit was sought, the 120-day period in which to charge back to a merchant the amount of a credit slip issued by the merchant but not processed against the cardholder’s account had expired, and Marine’s voluntary attempt on behalf of *471 defendant to collect the amount of the returned Visa purchase from the merchant had been unsuccessful.
Defendant does not state a cause of action in his third-party action. There is no claim that Marine received any benefit from the credit slip issued by the merchant nor is there any claim of negligence or intentional tortious conduct on the part of Marine. Even if there was one, the facts alleged could not support such a claim. Marine was not under any duty to credit a Master Charge cardholder’s account for the amount of returned goods purchased on a Visa charge account with another bank as Master Charge account slips are not negotiable instruments. (See Uniform Commercial Code, § 3-104.) Furthermore, defendant does not allege a breach of any contractual obligation by Marine. (See Lupinski v Village of Ilion, 59 AD2d 1050; Cohn v Lionel Corp., 21 NY2d 559.)
Plaintiffs motion for summary judgment is denied. Defendant’s third-party action against Marine Midland Bank is dismissed.