OPINION OF THE COURT
Ira B. Harkavy, J.
As the texture of the American economy evolves from paper to plastic, the disgruntled customer is spewing its wrath upon the purveyor of the plastic rather than upon the merchant.
Plaintiff George Izraelewitz commenced this action to compel the defendant bank Manufacturers Hanover Trust Company to credit his Mastercharge account in the amount of $290 plus finance charges. The disputed charge, posted to plaintiff’s account on July 16, 1981, is for electronic diagrams purchased by plaintiff via telephone from Don Britton Enterprises, a Hawaii-based mail order business.
On September 9, 1981 plaintiff advised defendant bank, Manufacturers Hanover Trust Company (Trust Company), that the diagrams had been unsuitable for his needs and provided defendant with a UPS receipt indicating that the purchased merchandise had been returned to Don Britton. Defendant’s customer service department credited plaintiff’s account and waived finance charges on the item. Trust Company subsequently proceeded to charge back the item to the merchant. The merchant refused to charge back through The 1st Hawaii Bank, and advised defendant bank of their strict “No Refund” policy. Don Britton also indicated that plaintiff, during the course of conversation, had *126 admitted that he was aware of this policy. On April 1,1982 defendant advised plaintiff that his account would be re-debited for the full amount. At two later dates, plaintiff advised Trust Company of said dispute, denied knowledge of the “No Refund” policy and stated that the goods had been returned. The Trust Company once again credited plaintiff’s account and attempted to collect from Don Brit-ton. The charge back was again refused and plaintiff’s account was subsequently redebited.
Bank credit agreements generally provide that a cardholder is obligated to pay the bank regardless of any dispute which may exist respecting the merchandise. An exception to this rule arises under a provision in the Truth in Lending Law which allows claimants whose transactions exceed $50 and who have made a good-faith attempt to obtain satisfactory resolution of the problem, to assert claims and defenses arising out of the credit card transaction, if the place of the initial transaction is in the same State or within 100 miles of the cardholder. (Consumer Credit Protection Act, US Code, tit 15, § 1666L)
It would appear that plaintiff is precluded from asserting any claims or defenses since Britton’s location exceeds the geographical limitation. This assumption is deceiving. Under Truth in Lending the question of where the transaction occurred (e.g., as in mail order cases) is to be determined under State or other applicable law. (Truth in Lending Regulations, 12 CFR 226.12 [c].) Furthermore, any State law permitting customers to assert claims and defenses against the card issuer would not be pre-empted, regardless of whether the place of the transaction was at issue. In effect, these Federal laws are viewed as bare minimal standards.
In Lincoln First Bank v Carlson (103 Misc 2d 467, 470) the court found that: “[T]he statement that a card issuer is subject to all defenses if a transaction occurred less than 100 miles from the cardholder’s address, does not automatically presume a cardholder to give up all his defenses should the transaction take place at a distance of greater than 100 miles from the mailing address.”
The facts at bar do not warrant a similar finding. Whereas in Lincoln (supra), the cardholder’s defense arose *127 due to an alleged failure of the card issuer itself to comply with statutory rules, the defendant herein is blameless. The geographical limitation serves to protect banks from consumers who may expose them to unlimited liability through dealings with merchants in far-away States where it is difficult to monitor a merchant’s behavior. These circumstances do not lend the persuasion needed to cast off this benefit.
Considering, arguendo, that under the Truth in Lending Law plaintiff was able to assert claims and defenses from the original transaction, any claims or defenses he chose to assert would only be as good as and no better than his claim against the merchant. Accordingly, plaintiff’s claim against the merchant must be scrutinized to ascertain whether it is of good faith and substantial merit. A consumer cannot assert every miniscule dispute he may have with a merchant as an excuse not to pay an issuer who has already paid the merchant.
The crux of plaintiff’s claim, apparently, is that he returned the diagrams purportedly unaware of merchant’s “No Refund” policy. The merchant contends that plaintiff admitted that he knew of the policy and nonetheless used deceptive means to return the plans; in that they were sent without a name so they would be accepted; were not delivered to an employee of the company; were not in the original box; and showed evidence of having been Xeroxed.
“No Refund” policies, per se, are not unconscionable or offensive to public policy in any manner. Truth in Lending Law neither “require[s] refunds for returns nor does it prohibit refunds in kind.” (12 CFR 226.12 [e].) Bank-merchant agreements, however, usually do contain a requirement that the merchant establish a fair policy for exchange and return of merchandise.
To establish the fairness in Don Britton’s policy, the strength of the reasons behind the policy and the measures taken to inform the consumer of it must necessarily be considered. Don Britton’s rationale for its policy is compelling. It contends that printing is' a very small part of its business, which is selling original designs, and “once a customer has seen the designs he possesses what we have to sell.” Britton’s policy is clearly written in its catalog *128 directly on the page which explains how to order merchandise. To compensate for not having a refund policy, which would be impractical considering the nature of the product, Britton offers well-advertised back-up plans with free engineering assistance and an exchange procedure, as well, if original plans are beyond the customer’s capabilities. The plaintiff could have availed himself of any of these alternatives which are all presumably still open to him.
On the instant facts, as between plaintiff and the defendant bank, plaintiff remains liable for the disputed debt, as he has not shown adequate cause to hold otherwise.
Judgment for defendant dismissing the complaint.