OPINION OF THE COURT
Roberta L. Dunlop, J.
After trial, judgment is for the defendant.
The court sets forth the following as its finding of facts and conclusion of law.
The credible evidence adduced during this nonjury trial de novo held on June 12, 1989 established that on July 11, 1988 *331 Fred Rosenthal, a salesman for the plaintiff, went to the house of Louis Olah who is the defendant in this action. Fred Rosenthal, on behalf of Tee Pee Fence and Railing Corporation and Louis Olah signed an agreement for the purchase and installation of three security storm doors. Tee Pee Fence and Railing Corporation is licensed to do business in the City of New York.
The price as set forth in the contract was $2,100 for the three security storm doors. The defendant wrote out a check in the amount of $700 for the deposit leaving a balance due of $1,400.
Prior to signing the contract, and as a condition to entering into the contract, Mr. Olah told Mr. Rosenthal that he wanted the doors to be installed by July 24, 1988 as he was going on vacation. Mr. Rosenthal telephoned Tee Pee Fence and then assured Mr. Olah that this would be possible providing they took the measurements in a day or two. He also informed Mr. Olah that they would start making the doors after they took the measurements. Since Mr. Olah wanted the doors by July 24, 1988 and since their usual delivery time was from two to six weeks he informed Mr. Olah that he could only assure delivery of the doors by July 24, 1988 if Mr. Olah would waive his right to cancel the contract within three days of signing it.
The contract signed by Louis Olah and Fred Rosenthal provided for the right to cancel at any time prior to midnight of the third business day after the date of the transaction. In this case the third date was July 14, 1988.
Plaintiff’s exhibit No. 2 in evidence is dated July 11, 1988 and contains the following hand-printed statement which Mr. Rosenthal contends he wrote prior to defendant signing it: "I, Louis Olah agree to waive my right to cancel contract No. 1637 within 3 days as long as doors are delivered by July 24, 1988.”
The defendant’s signature appears below this statement although it is his contention that he signed a blank piece of paper. The defendant acknowledges that he agreed to waive his right to cancel the contract provided plaintiff came to measure the doors the next day.
On the following day, July 12, 1988, defendant waited, but no one came to measure. He called the plaintiff’s office to find out why no one came and to ask when someone would come to measure. This procedure was repeated on July 13 and July 14, but still no one came to measure.
*332 Pláintiff failed to establish that anyone went to the defendant’s home to take any measurements for the doors in spite of the defendant’s telephoning the plaintiff to ascertain when they would be coming.
On the afternoon of July 14, 1988, after a final attempt earlier that day to contact the plaintiff and urge him to come to measure, defendant spoke to plaintiff’s manager and on the telephone unequivocally canceled the contract. In addition, he gave them written notice and also stopped payment on his check which was the $700 deposit for the doors.
The sole issue before this court is whether there was an effective waiver of the buyer’s right to cancel this door-to-door sale.
Section 426 of article 10A of the Personal Property Law provides as follows:
"1. 'Door-to-door sale’ shall mean a sale, lease or rental of consumer goods or services in which the seller or his representative personally solicits the sale, including those in response to or following an invitation by the buyer, and the buyer’s agreement or offer to purchase is made at a place other than the place of business of the seller. The term 'door-to-door sale’ does not include a transaction * * *
"(b) in which the buyer has initiated the contact and the goods or services are needed to meet a bona fide immediate personal emergency of the buyer, and the buyer furnishes the seller with a separate dated and signed personal statement in the buyer’s handwriting describing the situation requiring immediate remedy and expressly acknowledging and waiving the right to cancel the sale within three business days; or”.
Section 427 of the same article sets forth the buyer’s right to cancel.
"1. In addition to any right otherwise to revoke an offer, the buyer or other person obligated for any part of the purchase price may cancel to door-to-door sale until midnight of the third business day after the day on which the buyer has signed an agreement or offer to purchase relating to such sale.
"2. Cancellation occurs when written notice of cancellation is given to the seller.
"3. Notice of cancellation, if given by mail, shall be deemed given when deposited in a mailbox properly addressed and postage prepaid.
"4. Notice of cancellation need not take the form prescribed *333 and shall be sufficient if it indicates the intention of the buyer not to be bound.”
Section 428 provides in pertinent part that the seller must give the buyer a fully completed receipt or a copy of the contract of the parties; the contract must, in bold type, set forth the rights of the buyer to cancel within three days; the seller must attach to the contract a notice of cancellation; the seller must orally, at the time of signing the contract, tell the buyer about his right to cancel; and the contract or receipt shall not contain a confession of judgment or waiver of any right of the buyer specifically his right to cancel.
The purported waiver of the defendant in this case is ineffective since it is a part of the contract of the parties and, therefore, violative of section 428 (3) of the act.
During the negotiations of the contract defendant made it clear that delivery of the doors no later than July 24, 1988 was an essential element of the transaction. If delivery by July 24, 1988 could not be promised by the plaintiff, defendant would not sign the contract. Plaintiff agreed provided that defendant signed a waiver of his right of cancellation. The salesman prepared a handwritten waiver, on a separate piece of paper that defendant signed contemporaneously with signing the contract. It is apparent that both the delivery date and the waiver are essential terms of the entire contract of the parties. Plaintiff’s attempt to put the waiver on a separate piece of paper from the preprinted contract amounts to nothing more than an attempt by plaintiff to avoid the applicability of section 428 (3) (see, e.g., De Rouville v E.F.G. Baby Prods. Co., 69 Misc 2d 252, 254, affd 40 AD2d 736) and cannot be given effect.
Plaintiff in this case also claims that the waiver of defendant’s right to cancel was essential because in order to make delivery within the requisite time period he had to commence performance on the contract immediately and, therefore, could not risk cancellation of the contract after three days. The statute at section 426 (1) (b) specifically provides protection to a seller who in an emergency situation has to render performance immediately. The plaintiff, however, has failed to establish either that he immediately began performance or that this was an emergency where his immediate performance was necessary to fulfill his obligation pursuant to the contract. In addition the waiver itself fails to comply with the statutory standards of the waiver described in section 426 (1) (b).
*334 The salesman told the defendant that in order to make the July 24th delivery date the measurements of the door had to be taken within the next day or two so that they could immediately begin making the doors. However, plaintiff did not go to the home of the defendant to take the measurements within the first three days after the contract. Nor was it proven that the measurements were ever taken. In fact the evidence established that two weeks was not an unusually short delivery time, since the usual delivery time was from two to six weeks. Plaintiff has, therefore, failed to establish that this was an "emergency” situation requiring his immediate performance.
Even if this was an emergency, the waiver at issue here fails to comply with the provisions of the statute. The waiver in this case was written by the salesman (plaintiff’s authorized agent) and does not set forth the nature of the emergency. In addition the defendant vehemently denies ever having seen or signed the waiver. It is his contention that he was asked to sign a blank piece of paper. In any event, the statute requires in clear and unambiguous language that the "buyer” provide a separately dated and signed statement in the "buyer’s handwriting” describing the circumstances requiring immediate remedy and expressly acknowledging and waiving the right to cancel.
The waiver in this case is not in the form expressly required by the statute, nor has the plaintiff established that the circumstances of this transaction could be considered an emergency such that section 426 (1) would be applicable.
Finally, it must be remembered that the Door-to-Door Sales Protection Act (Personal Property Law art 10-A) was enacted by the Legislature due to its overwhelming concern over the susceptibility of door-to-door sales to abuses.
This act was intended to afford the consumer, a "cooling off” period to cancel contracts which are entered into as a result of high pressure door-to-door sales tactics. (Personal Property Law § 425.)
While there is nothing in the statute which absolutely prohibits a buyer from waiving this right, it is apparent from the intent of Legislature as well as the entire language of the statute (see especially, Personal Property Law § 426 [1] [b]; §428 [3]) that waivers are frowned upon. The buyer cannot waive the rights conferred by this statute except in the manner and under the circumstances set forth in the statute. *335 When faced with a waiver, as in this case, the court must carefully scrutinize the facts and circumstances surrounding the transaction and the intent of the consumer.
It is apparent from the evidence in this case that this transaction and the events which gave rise to the waiver were exactly the kind to which the statute was intended to apply. To permit the plaintiff to recover based on a waiver obtained under the circumstances herein would serve to defeat the purpose of the statute and to deprive the defendant a statutory right which he obviously did not knowingly, voluntarily and unconditionally surrender.
For all the foregoing reasons, judgment is for the defendant.