OPINION OF THE COURT
Thomas A. Dickerson, J.
The plaintiff, soon to be a new bride, attended the Great Bridal Expo. The Bridal Expo featured exhibitors displaying a broad spectrum of goods and services, typically purchased by recently engaged young women eager to possess all that a modern American bride should possess. Amongst the many exhibitors was the defendant, 21st Century Concepts, Inc. doing business as Royal Prestige (Royal Prestige). Royal Prestige, a direct marketing company, displayed a variety of knives, china, glassware, water filters and cookware. The plaintiff stopped at the Royal Prestige booth and filled out a card noting her name, address and phone number.
Royal Prestige sells its products through door-to-door sales. Royal Prestige became aware of the plaintiff and her bridal needs when she filled out a "lead” card at the Bridal Expo. Thereafter, Royal Prestige salesman Larry Kieffer called the plaintiff seeking to arrange a home sales visit. To induce the plaintiff to listen to his sales pitch, Mr. Kieffer offered plaintiff $100 in cash, a free facial and 100 rolls of free film.
*934 Intrigued, the plaintiff agreed and on September 28, 1993 Mr. Kieffer knocked on the plaintiff’s door, gave her $100 in cash, a free facial and one roll of free film. To obtain the remaining 99 rolls of "free” film the plaintiff had to use the first roll and have it processed by Royal Prestige’s chosen film processor. After paying for her prints the plaintiff would be given one new roll of free film and so on. In addition, after the sale Mr. Kieffer offered plaintiff a reduced cost Caribbean vacation which plaintiff later rejected because of the poor quality and location of the offered hotels.
Once inside the plaintiff’s home, Mr. Kieffer spent 2Vi hours extolling the alleged virtues of the entire line of Royal Prestige products. Most of that time (IV2 hours) was spent on selling plaintiff a set of pots and pans pretentiously identified as the Royal Prestige Health System (the Health System). The Health System consisted of several cooking pots which appeared to be small pressure cookers. These miniature pressure cookers were beautifully photographed and described in elegant terms as sauce pan, skillet, dutch oven and steamer/ colander. The Health System was wildly expensive, e.g., the cost (including freight, handling and local sales tax) of the Royal Prestige "22 piece Health System” which consisted of seven pots plus accessories was $1,505.63 or nearly $200 a pot.
Mr. Kieffer pitched the Health System as a technically advanced means of retaining the nutritional value of cooked food. This claim was presented without any supporting documentation such as a Consumer Union Report or the like. According to a Royal Prestige brochure its pots were designed to cook without using water or grease beyond that already contained in the food to be cooked. In addition, Mr. Kieffer tailored his pitch to the young expectant bride by suggesting a direct relationship between using the Health System pots and preventing heart disease and having healthier babies. The plaintiff relied upon Mr. Kieffer’s representations about the benefits of the Health System, agreed to purchase the 22-piece Health System and gave Mr. Kieffer a check for the total cost of $1,505.63.
The front of the sales contract, dated September 28, 1993 contained the following: "You, the Purchaser, may cancel this transaction at any time prior to midnight of the third business day after the date of this transaction. See the attached notice of cancellation form for an explanation of this right.” On the reverse side of the sales contract under the title of "Notice of Cancellation” there was extensive language regarding plain *935 tiffs cancellation rights. The notice of cancellation contained blanks for the date, the name and address of the seller and the last possible day to cancel the contract. Mr. Kieffer failed to complete any of these blanks.
After receiving her ordered Health System on October 27, 1993, the plaintiff decided to cancel the sales contract and returned the pots with a letter demanding a full refund. Royal Prestige rejected plaintiffs cancellation of the sales contract and sent the purchased pots back to the plaintiff with a letter stating "[t]he quality of our cookware is considered by many experts to be the finest manufactured in the world today.”
DISCUSSION
At trial only the plaintiff testified as to the representations made by Mr. Kieffer during his 21/i-hour sales presentation. Predicated upon the above findings of fact, this court finds that plaintiff has asserted the following cognizable causes of action against the defendant: (1) rescission based upon a violation of Personal Property Law § 428 (Door-To-Door Sales Protection Act); (2) rescission based upon (a) want of consideration, (b) failure of consideration, (c) unconscionability, and (d) misrepresentations; and (3) violation of General Business Law § 349 (deceptive and unfair business practices).
The marketing of goods and services through door-to-door sales can be cost effective for manufacturers and distributors. Some manufacturers and distributors favor door-to-door sales for several reasons. First, the per unit cost of generating a sale is relatively low. This is because there is no retail store overhead such as rent, salaries, insurance and so forth. Instead a salesman working on a straight commission will use the consumer’s living room to sell his wares and take his orders. Second, the selling price may be several times greater than that which would be obtainable in a more competitive environment where consumers compare different brands of the same product (see, e.g., Vom Lehn v Astor Art Galleries, 86 Misc 2d 1 [1976] [consumers charged $67,000 for carvings worth $14,750]). If, for example, vacuum cleaners were sold exclusively in retail stores with competing brands, then the sale price might be closer to $200 per unit instead of the $1,000 per unit charged consumers during door-to-door sales (see, e.g., Vacuum Cleaners [You can spend more than $1000, but why should you when $200 can buy good performance?], 58 Consumer Reports 2, at 67-72 [Feb. 1993]). Third, consumers *936 are less defensive and more comfortable in their own homes and because of this are, especially, susceptible to high pressure sales tactics (see, e.g., State of New York v Stereo Importers, 114 Misc 2d 864 [1982] [absence of opportunity for consumer to carefully consider a purchase]).

Violation of Door-To-Door Sales Protection Act

Because of all of these factors door-to-door sales often lead to abuses, over-reaching, misrepresentations and fraud. As a consequence several States including New York have enacted remedial statutes which, within the limited context of retail sales made in the home, give consumers contractual rescission rights not otherwise available at common law. These statutes, variously known as Door-To-Door Sales Protection Acts (see, e.g., Hollywood Decorators v Lancet, 118 Misc 2d 1096 [1983] [Personal Property Law, art 10-A, §§ 425-431]; Crystal v West & Callahan 328 Md 318, 614 A2d 560 [1992] [Maryland Door-To-Door Sales Protection Act]; Swiss v Williams, 184 NJ Super 243, 445 A2d 486 [1982] [New Jersey Door-To-Door Sales Protection Act held constitutional]), have as their purpose "to afford consumers a 'cooling-ofF period to cancel contracts which are entered into as a result of high pressure door-to-door sales tactics” (Personal Property Law § 425; 21 NY Jur 2d, Consumer And Borrower Protection, §§ 82-89).
The contract between Royal Prestige and the plaintiff violated Personal Property Law § 428 (1) (b). This section provides that with respect to the required notice of cancellation on the back of the contract, "the seller shall complete both copies by entering the name of the seller, the address of the seller’s place of business, the date of the transaction, and the date, not earlier than the third business day following the date of the transaction”. Mr. Kieffer failed to fill in the required information in the Royal Prestige sales contract. A failure to properly inform the plaintiff of her cancellation rights is a violation (see, e.g., Hollywood Decorators v Lancet, supra, at 1097; Vom Lehn v Astor Art Galleries, supra, at 12; Matter of Lefkowitz v E. F. G. Baby Prods. Co., 40 AD2d 364 [1973]; Levitan & Sons v Francis, 88 Misc 2d 125 [1976]; State of New York v Princess Prestige Co., 51 AD2d 530, mod 42 NY2d 104 [1977]) and allows the plaintiff to cancel her contract until a reasonable time after Royal Prestige has properly informed her of her cancellation rights (Personal Property Law § 428 [2]). Royal Prestige has yet to complete the contract *937 as required. Plaintiff timely cancelled her contract on October 27, 1993, demanded a refund of her contract payment of $1,505.63, returned the Health System to defendant (which she was not required to do [Personal Property Law § 430 (consumers may tender goods at residence)]), which refused to accept the rejected Health System returning it yet again to plaintiff.
The contract also violated Personal Property Law § 428 (4). This section provides that the sales contract "shall disclose conspicuously the seller’s refund policy as to all goods * * * subject to the door-to-door sales agreement”. The Royal Prestige sales contract blissfully states that the "Seller promises you fair and honorable treatment”. This statement is not only not true within the facts of this case, but it is virtually meaningless and does not rise to the level of disclosing "seller’s refund policy”. Within 20 days after receiving the Health System the plaintiff timely notified Royal Prestige of her intent to cancel and demanded a full refund.

Demand for Rescission

Notwithstanding the statutory right of rescission afforded plaintiff by Personal Property Law § 428, the Royal Prestige sales contract should be rescinded based upon the application of several common-law doctrines. Whether viewed as a want of consideration or failure of consideration, it is clear that the plaintiff was grossly overcharged for the Health System she purchased (22 NY Jur 2d, Contracts, §§ 328, 439, 464).
Through high pressure sales tactics the plaintiff was induced to pay nearly $200 a pot for cookware of dubious and undocumented nutritional, medical or technical value. Royal Prestige misrepresented, implicitly or explicitly, that its Health System provided exceptional nutritional value, that it would prevent heart disease, that it would help the plaintiff have healthier babies and that many experts consider the Health System "to be the finest manufactured in the world today”.
The Health System was grossly misrepresented, overpriced and the transaction was unconscionable (see, e.g., Hertz Corp. v Attorney-General of State of N. Y, 136 Misc 2d 420 [Sup Ct 1987] [unconscionable bargain defined]; Kugler v Romain, 58 NJ 522, 279 A2d 640, 652 [1971] [unconscionably high prices]; People v Two Wheel Corp., 71 NY2d 693 [1988]).

*938
Violation of General Business Law § 349

General Business Law § 349 prohibits deceptive business practices. General Business Law § 349 is a broad, remedial statute (see, e.g., Andre v Pace Univ., 161 Misc 2d 613 [Yonkers City Ct] [educational malpractice]; Note, New York Creates a Private Right of Action to Combat Fraud: Caveat Venditor, 48 Brook L Rev 509, 553-572 [1982]) directed towards giving consumers a powerful remedy to right consumer wrongs. The elements of a violation of General Business Law § 349 are (1) proof that the practice was deceptive or misleading in a material respect, and (2) proof that plaintiff was injured (see, Givens, Practice Commentaries, McKinney’s Cons Laws of NY, Book 19, General Business Law, art 22-A, at 565; McDonald v North Shore Yacht Sales, 134 Misc 2d 910 [Sup Ct 1987]; Geismar v Abraham & Strauss, 109 Misc 2d 495 [Suffolk Dist Ct 1981]; Vallery v Bermuda Star Line, 141 Misc 2d 395 [1988]). There is no requirement under General Business Law § 349 that plaintiff prove that defendant’s practices or acts were intentional, fraudulent or even reckless. Nor is there any requirement under General Business Law § 349 that plaintiff prove that she relied upon defendant’s misrepresentations and deceptive practices.
Initially, the failure of Royal Prestige to comply with the disclosure requirements of Personal Property Law § 428 regarding cancellation and refund rights also constitutes an unfair and deceptive business practice under General Business Law § 349 (see, e.g., State of New York v Princess Prestige Co., supra, at 106-107; Matter of Lefkowitz v E. F. G. Baby Prods. Co., supra, at 367 [failure to give "the required notice can only be viewed as an illegal act as a matter of law”]; Swiss v Williams, supra, 184 NJ Super 243, 445 A2d, at 487 [violation of New Jersey Door-To-Door Sales Protection Act is also a violation of New Jersey Consumer Protection Act]; People [Lefkowitz] v Volkswagen of Am., 47 AD2d 868 [1976] [deceptive and misleading advertising is per se violation of Consumer Protection Act]; Matter of State of New York v ITM, Inc., 52 Misc 2d 39 [1966] [failure to reveal consumer’s probability of earnings from chain letter constitutes fraud]; Note, op. cit., 48 Brook L Rev, at 561-562).
Secondly, Royal Prestige’s unsupported representations regarding the nutritional value of the Health System and its relationship to preventing heart disease and having healthier babies are misleading and deceptive (see, e.g., Note, op. cit., at *939 554 [misrepresentations as to quality, utility or effectiveness of an item or service may be misleading and deceptive]; Continental Wax Corp. v Federal Trade Commn., 330 F2d 475 [2d Cir 1964] [misrepresentations as to utility of product]; Baker’s Franchise Corp. v Federal Trade Commn., 302 F2d 258 [3d Cir 1962] [misrepresentations as to quality of product]; Charles of the Ritz Distrib. Corp. v Federal Trade Commn., 143 F2d 676 [2d Cir 1944] [misrepresentations as to effectiveness of product]; Matter of State of New York [Lefkowitz] v Transcience Corp., 362 F Supp 922 [SD NY 1973] [brine shrimp represented as "scientifically miraculous 'Sea Monkeys’ ”]; Matter of People [Lefkowitz] v Therapeutic Hypnosis, 83 Misc 2d 1068 [1975] [misrepresenting qualifications of staff to practice hypnosis to cure smoking and overeating]).
Thirdly, the inducements used by Royal Prestige salesman Larry Kieffer to convince the plaintiff to open the door of her home and listen to his sales pitch were themselves misleading and deceptive. Mr. Kieffer promised plaintiff $100 and a free facial and he delivered these two inducements. Mr. Kieffer also promised 100 rolls of "free” film and delivered only one roll while the remaining 99 were available only if plaintiff spent monies on processing exposed film, one roll at a time. This "free” offer was misleading and deceptive (see, e.g., Matter of Arthur Murray Studio, 78 FTC 401 [1971] [misrepresentations of free dance lessons]; Matter of Golden Fifty Pharm. Co., 77 FTC 277 [1970] [free gifts require future purchases]; People v Record Club, 51 AD2d 709 [1976] [free records not free]; Giummo v Citibank, 107 Misc 2d 895 [1981] [free checking to induce new accounts not free]). Mr. Kieffer promised a reduced price vacation which plaintiff rejected after discovering the poor quality and location of the hotels offered. This vacation offer was misleading and deceptive (see, e.g., Federal Trade Commn. v World Travel Brokers, 861 F2d 1020 [7th Cir 1988] [$29 airfare to Hawaii required purchase of expensive hotel accommodations]; Federal Trade Commn. v Amy Travel Serv., 875 F2d 564 [7th Cir 1989] [bogus vacation passports]) and failed to disclose material information regarding the actual value of the vacation package.
DAMAGES
The court awards the following damages to the plaintiff.
First, damages will include the full contract price of $1,505.63 which includes freight, handling and local sales tax *940 (Personal Property Law § 429 [1]); the cost of mailing the Health System back to Royal Prestige of $49.70 (Personal Property Law § 430 [1]); and $100 because Royal Prestige refused to refund the contract price (Personal Property Law § 429 [3]).
Second, pursuant to General Business Law § 349 (h) the court finds that defendant wilfully violated General Business Law § 349. Although the court would like to treble plaintiff’s actual damages of $1,555.33, this amount exceeds the maximum $1,000 permissible (see, Hart v Moore, 155 Misc 2d 203 [1982]).
Third, pursuant to Personal Property Law § 429 (3) and General Business Law § 349 (h) the court awards plaintiff attorney’s fees and costs of $344.66 (see, Levitan & Sons v Francis, 88 Misc 2d 125, supra; Hollywood Decorators v Lancet, 118 Misc 2d 1096, supra; Vom Lehn v Astor Art Galleries, 86 Misc 2d 1, supra). Considering plaintiff’s counsel’s vigorous efforts during trial and an excellent posttrial memorandum of law, the court would have awarded greater fees and costs but at the time this lawsuit was filed the jurisdictional limit of this court was $2,000.