OPINION OF THE COURT
Thomas A. Dickerson, J.
The Shedding Fake Fur
The plaintiff, Catherine Baker (Baker), purchased a fake fur coat (the Fake Fur) from the defendant, Burlington Coat Factory Warehouse (Burlington), located in Scarsdale, New' York. Baker paid $127.99 in cash and returned the Fake Fur two days later after it began shedding profusely.
No Cash Refunds Policy
The shedding was unacceptable, the Fake Fur unwearable and Baker wanted her money back. The shedding was so severe that Baker’s allergies were exacerbated necessitating a visit to her doctor and the inevitable drugstore. Baker demanded that Burlington refund her $127.99 cash payment. Sympathy, yes; store credit, yes; new coat of equal value, yes; cash refund, not a chance. Baker searched the store for a Fake Fur of equal value and found none to her liking, refused the store credit, repeated her demand for a cash refund and commenced this lawsuit when Burlington refused.
The No Refund Signs
In its store Burlington displayed several large signs (defendant’s exhibits A, B) which state, in part:
“warehouse policy
“Merchandise, in New Condition, May be Exchanged Within 7 Days of Purchase for Store Credit and Must Be Accompanied by a Ticket and Receipt. No Cash Refunds or Charge Credits”.
*953 The Sales Receipt
On the front of Baker’s sales receipt was the following language: “Holiday Purchases May Be Exchanged Through January 11th, 1998 In House Store Credit Only No Cash Refunds Or Charge Card Credits”.
On the back of the sales receipt was the following language: “We Will Be Happy To Exchange Merchandise In New Condition Within 7 days When Accompanied By Ticket And Receipt. However, Because Of Our Unusually Low Prices: No Cash Refunds Or Charge Card Credits Will Be Issued. In House Store Credit Only”. Baker claimed at trial that she did not read the aforementioned language and was unaware of Burlington’s “No Cash Refunds” policy.
DISCUSSION
Based upon the foregoing facts the court finds that the plaintiff has stated cognizable causes of action for (1) breach of contract, (2) breach of an implied warranty of merchantability (UCC 2-314 ), and (3) violation of General Business Law § 349 (deceptive and unfair business practices).
No Refund Policies Generally
Under most circumstances retail stores in New York State are permitted to establish a no cash and no credit card charge refund policy and enforce it (see, e.g., Izraelewitz v Manufacturers Hanover Trust Co., 120 Misc 2d 125 [1983] [consumer returns electronic diagrams; no refund policy enforced]; Holzberg v Tourneau, Inc., 147 Misc 2d 987 [1990] [consumer returns $12,500 gold and diamond Cartier watch; no refund policy enforced]; compare, May v Devco Shops, 156 Misc 2d 656 [1993] [consumer returns two Bombay commodes; no refund policy not enforced]; Dudzik v Klein’s All Sports, 158 Misc 2d 72 [1993] [consumer returns “unbreakable” bat which broke; no refund policy not enforced]).
Retail store refund policies are governed, in part, by General Business Law § 218-a (“Disclosure of refund policies”), which requires conspicuous signs (General Business Law § 218-a [1]) on the item or at the cash register or on signs visible from the cash register or at each store entrance, setting forth (General Business Law § 218-a [2]) its refund policy including whether it is “in cash, or as credit or store credit only” (General Business Law § 218-a [2] [d]). If the store violates General Business Law § 218-a the consumer has 20 days (General Business Law § 218-a [3]) to return “merchandise [which] has not been used or damaged”.
*954 Were The Signs Visible?
The plaintiff returned the undamaged and unworn, albeit shedding, Fake Fur to defendant within two days of purchase thus coming within defendant’s “7 Days of Purchase” policy and within the 20-day claim filing period in General Business Law § 218-a (3) (see, e.g., May v Devco Shops, supra, at 657 [failure to request refund within 20 days of purchase]; Holzberg v Tourneau, Inc., supra, at 989 [returned watch altered and worn]). Although plaintiff professed ignorance of defendant’s refund policy, the court finds that defendant’s signs and the front and back of its sales receipt reasonably inform consumers of its no cash and no credit card charge refund policy (see, Dudzik v Klein’s All Sports, supra, at 73 [“Klein’s All Sports has a properly posted refund policy”]).
The Fake Fur Was Defective
Notwithstanding its visibility the defendant’s no cash and no credit card charge refund policy as against the plaintiff is unenforceable. Stated, simply, when a product is defective as was the plaintiff’s common and, hardly unique,* shedding Fake Fur, the defendant cannot refuse to return the consumer’s payment whether made in cash or with a credit card.
UCC 2-314 (2) (c) mandates that
“a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind * * *
“(2) Goods to be merchantable must be * * *
“(c) * * * fit for the ordinary purposes for which such goods are used”.
Should there be a breach of the implied warranty of merchantability then consumers may recover all appropriate damages including the purchase price in cash (UCC 2-714). The court finds that defendant sold plaintiff a defective and unwearable Fake Fur and breached the implied warranty of merchantability (see, e.g., Bonvoit Teller & Co. v Staub Furs, 208 Misc 589 [Sup Ct, NY County 1955] [defective mink coat breached implied warranty of merchantability and fitness for resale]). *955 The plaintiff is entitled to the return of her purchase price of $127.99 in cash and all other appropriate damages (see, e.g., Bonwit Teller & Co. v Staub Furs, supra, at 590 [purchase price and lost profits]). However, the plaintiffs claim for the $15 co-pay for visiting her doctor and the cost of allergy medicine is denied. The plaintiff admitted having allergies but it is not clear that the Fake Fur exacerbated those allergies.
UCC 2-314 and 2-714 Preempt General Business Law § 218-a
As between the implicit cash refund policy contained in UCC 2-314 and 2-714 and the no cash refund policy explicitly authorized in General Business Law § 218-a (2), the UCC provisions are paramount and preempt any contrary provisions in General Business Law § 218-a (see, e.g., Dudzik v Klein’s All Sports, 158 Misc 2d 72, 75, supra [“To hold otherwise would allow a merchant, whether in good faith * * * or otherwise, to place in commerce a defective product and merely give credit exchange upon (the product’s return)”]; May v Devco Shops, 156 Misc 2d 656, 659-660, supra [retailer’s no refund policy preempted by refund rights arising from violations of General Business Law § 396-u (Merchandise Delivery Act)]; Walker v Winks Furniture, 168 Misc 2d 265, 269 [1996] [no cash refunds policy and 20% forfeiture cancellation policy “null and void and contrary to law since it circumvents the requirements of General Business Law § 396-u”]; Filpo v Credit Express Furniture, NYLJ, Aug. 26, 1997, at 26, col 4 [Yonkers City Ct] [20% liquidated damages clause and 30 days exchange clause unenforceable; “These clauses impermissibly limit plaintiffs statutory rights (Personal Property Law § 428 [3]) (‘A door-to-door sales contract * * * shall not include any * * * waiver of any of the rights to which the buyer is entitled under this article’)”]; Tee Pee Fence & Railing Corp. v Olah, 144 Misc 2d 330, 334 [1989] [“The buyer cannot waive the rights conferred by this statute”]).
Violation of General Business Law § 349
General Business Law § 349 prohibits misleading and deceptive business practices and applies to the retail sales of a variety of household goods (see, e.g., Geismar v Abraham & Straus, 109 Misc 2d 495 [1981] [false advertisements about the price of dishes]; Rossi v 21st Century Concepts, 162 Misc 2d 932 [1994] [overpriced and misrepresented pots and pans]; Walker v Winks Furniture, supra [furniture]; Karlsson v Casio, NYLJ, Sept. 24, 1992, at 25, col 4 [Sup Ct, NY County] [hand-held computer *956 misrepresented]; Filpo v Credit Express Furniture, supra [furniture]; DeSantis v Sears, Roebuck & Co., 148 AD2d 36 [1989] [power saws]).
General Business Law § 349 is a broad, remedial statute (see, e.g., Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, 85 NY2d 20 [1995]; see also, Note, New York Creates a Private Right of Action to Combat Consumer Fraud: Caveat Venditor, 48 Brook L Rev 509, 553-572 [1982]) directed towards giving consumers a powerful remedy. The elements of a violation of General Business Law § 349 are (1) proof that the practice was deceptive or misleading in a material respect, and (2) proof that plaintiff was injured (see, Givens, Practice Commentaries, McKinney’s Cons Laws of NY, Book 19, General Business Law § 349, at 565; McDonald v North Shore Yacht Sales, 134 Misc 2d 910 [1987]; Geismar v Abraham & Straus, supra; Walker v Winks Furniture, supra; Rossi v 21st Century Concepts, supra; Filpo v Credit Express Furniture, supra). There is no requirement under General Business Law § 349 that plaintiff prove that defendant’s practices or acts were intentional, fraudulent or even reckless. Nor does plaintiff have to prove reliance upon defendant’s deceptive practices.
The defendant’s no cash and no credit card charge refund policy as it applies to defective clothing is misleading and deceptive and “[has] a broad impact on consumers at large” (New York Univ. v Continental Ins. Co., 87 NY2d 308, 320 [1995]).
First, the defendant’s failure to inform consumers of their statutory right to a cash or credit card charge refund when clothing is defective and unwearable (and hence constitutes a breach of the implied warranty of merchantability under UCC 2-314) is misleading and deceptive (see, e.g., Filpo v Credit Express Furniture, supra [failure to inform consumer of statutory rescission rights is misleading]; Matter of State of New York v ITM, Inc., 52 Misc 2d 39, 50 [1966] [failure to reveal consumer’s probability of earnings from chain letter constitutes fraud]; Note, New York Creates a Private Right of Action to Combat Consumer Fraud: Caveat Venditor, op. cit., at 568 [“prohibition of conduct designed to exploit the consumer’s lack of knowledge, gullibility and vulnerability, or to deprive him of essential information that would influence his purchasing decision—whether termed ‘unfair’ or ‘deceptive’—is essential”]).
Second, the defendant’s signs and sales receipts misinform consumers by boldly stating that there are “No Cash Refunds or Charge Credits” under any circumstances. The law is *957 otherwise and defendant’s signs and sales receipts unfairly chill the consumer’s enthusiasm to enforce a statutory right to seek a full refund when the clothing is defective (see, e.g., Matter of Lefkowitz v E. F. G. Baby Prods., 40 AD2d 364, 367 [1973] [failure to give required notice illegal act]). The defendant’s signs and sales receipts should contain language which encourages consumers to return defective clothing for a full cash refund or credit card charge refund within a reasonable time period.
Third, the defendant’s refusal to give plaintiff a full cash refund in exchange for the shedding Fake Fur was itself misleading and deceptive.
DAMAGES
Damages will include the full contract price of $127.99, 9% interest from December 5, 1997, the date of purchase, and costs, all to be paid in cash, upon the return of the Fake Fur to defendant.

 In Izraelewitz v Manufacturers Hanover Trust Co. (120 Misc 2d 125 [1983], supra), the court enforced a no refunds policy because of the uniqueness and reproducibility of defendant’s electronic diagrams (“[retailer’s] rationale for its policy is compelling. It contends that [its business] is selling original designs, and ‘once a customer has seen the designs he possesses what we have to sell’ ” [emphasis added]).