OPINION OF THE COURT
Thomas A. Dickerson, J.
After trial held on November 3, 1994, the court makes the following findings of fact and conclusions of law.
The plaintiff’s parents, Yetta and Morris Friedman, died some years ago and were buried in adjoining graves in Mount Hope Cemetery in Hastings-on-Hudson, New York. In order to beautify and adorn the resting place of her parents the plaintiff entered into three agreements with the defendant, Mount Hope Cemetery Association (Mt. Hope).
THE 1979 AGREEMENT
After the burial of Yetta Friedman in 1979, the plaintiff paid Mt. Hope $37 in consideration for which Mt. Hope promised to provide "regular cutting of the grass, trimming around memorials, top dressing and fertilizing to improve the condition of the lawn * * * Renovation of the new grave including tamping, leveling and seeding to develop a good lawn is $28. Care of the grave to December 31, 1980 is $9, a total of $37.”
THE 1980 MT. HOPE TRUST AGREEMENT
In 1980 the plaintiff paid $250 to Mt. Hope for perpetual care of the grave of her mother, Yetta Friedman. The plaintiff was given Trust Fund certificate No. 5995 which provided that the $250 would be held in trust by Mt. Hope, as trustee, and that the annual income would be used to provide "special care in perpetuity”.
THE 1991 MT. HOPE TRUST AGREEMENT
In 1991 the plaintiff paid $300 to Mt. Hope for perpetual care of the grave of her father, Morris Friedman. Mt. Hope *1056 issued Trust Fund certificate No. 8755 which established a trust, with Mt. Hope as trustee, and provided "special care in perpetuity” for the grave of Morris Friedman. The plaintiff paid defendant an additional $53 for "renovation of grave * * * by tamping, adding topsoil, leveling, then fertilizing and seeding with special seed”.
THE CONDITION OF THE GRAVES 1991-1994
On six occasions during the period 1991 to 1994 the plaintiff visited her parents and found their graves to be poorly maintained and "covered in white sand and pebbles” while grass on surrounding graves was "lush and green”. The poorly maintained condition of her parents’ graves caused the plaintiff to feel distress, disappointment and anger. At the end of each visit the plaintiff complained to defendant’s employees and was given many excuses for why the graves were shabby, e.g., "we had too much rain; we had too little rain; it was too hot; it was too cold; or it was just seeded and takes time.”
In June of 1994 the plaintiff sent Mt. Hope a letter and photographs of the barren grave sites demanding "a refund of the money, with interest, for all the years they [the graves] have been endowed, and proper care and maintenance have been lacking.” After this lawsuit was commenced defendant, apparently, planted grass on top of the graves.
DISCUSSION
At trial the defendant failed to produce a witness with firsthand knowledge of how and in what manner the graves of plaintiff’s parents were cared for during the period 1991 to 1994. Based upon the facts the plaintiff has set forth the following cognizable causes of action: (1) breach of contract, (2) rescission based upon (a) want of consideration or (b) failure of consideration and (3) breach of fiduciary duty.
DUTIES OF CEMETERY ASSOCIATIONS
The operation of a cemetery by cemetery associations such as Mt. Hope is "impressed with a public interest” (18 NY Jur 2d, Cemeteries and Dead Bodies, § 5); is considered in the nature of a "pious and public use” (id., § 6), and is subject to "the police power of the state for the protection of the public health.” (Id., § 16.) It is public policy that "cemeteries * * * must be kept in proper condition and appearance” (id., § 45). Cemetery associations such as Mt. Hope are authorized to act *1057 as trustees and to establish trusts for the perpetual care of burial plots (id., §§ 32, 33).
RIGHTS OF BURIAL PLOT OWNERS
The rights of burial plot owners and their heirs are imbued with the public interest and rest upon the well-recognized principle that "the resting place of the dead is regarded by all civilized peoples as hallowed ground” (18 NY Jur 2d, Cemeteries and Dead Bodies, § 62). The right of the owner "of a * * * grave to beautify, adorn and improve the resting place of beloved dead cannot be interfered with by a cemetery”. (Id., §63.)
BREACH OF CONTRACT
The plaintiff and defendant entered into three agreements. Stated, simply, in consideration for $603, the defendant agreed to beautify two graves by planting grass and providing perpetual care consisting of "regular cutting of the grass, trimming around memorials, top dressing and fertilizing to improve the condition of the lawn”. It is clear that from 1991 to 1994 defendant breached its agreement with plaintiff by failing or refusing to deliver the perpetual lawn care promised and contracted for. The defendant is liable for all appropriate damages arising from its breach of contract.
DEMAND FOR RESCISSION
The failure of the defendant to deliver lawn care services was so complete during the period 1991 to 1994 that rescission of the perpetual care agreements is justified. Whether viewed as a want of consideration (consideration is lacking) or failure of consideration (supervening cause causes performance failure), plaintiff received little, if anything, of value from the defendant during the period 1991 to 1994 (22 NY Jur 2d, Contracts, §§ 328, 439, 464).
The fact that defendant, finally, installed a lawn after the instant lawsuit was started does not alter the fact that for nearly five years defendant did nothing to honor its trust agreements and provide the quality of perpetual care promised to plaintiff.
BREACH OF FIDUCIARY DUTY
The defendant cemetery association is a trustee, by operation of law, of the graves of the plaintiff’s parents. In *1058 addition, Mt. Hope assumed the obligations of a trustee and fiduciary when it accepted plaintiff’s monies and issued its Mt. Hope Trust certificates. These certificates declared that plaintiff’s monies would be "placed in the Trust Fund, and the net income earned thereon [will] be used to provide special care in perpetuity” for the graves of plaintiff’s parents. From 1991 to 1994 the defendant did little, if anything, to provide the promised special care. Its fiduciary duty required much, much more.
As stated by the court in Di Maio v State of New York (135 Misc 2d 1021, 1025 [1987]): "Broadly stated, a fiduciary relationship is one founded upon trust or confidence reposed by one person in the integrity and fidelity of another, and embraces both technical fiduciary relations and those informal relations which exist when one man trusts in and relies upon another”.
By failing and refusing to honor its trust obligations, the defendant breached its fiduciary duty to plaintiff and is liable for the damages flowing therefrom.
DAMAGES
The court awards the following damages to the plaintiff.
First, damages will include the $603 which plaintiff paid defendant in consideration for the issuance of the Mt. Hope Trust agreements and related contracts.
Second, there was a special relationship between the parties, one imbued with the public interest. Defendant agreed to beautify hallowed ground and repeatedly failed to do so notwithstanding plaintiff’s repeated complaints. Damages for the distress and mental anguish experienced by plaintiff are appropriate under the circumstances of this case for defendant’s breach of contract and breach of fiduciary duty (see, e.g., Zaccaro v Jenik Motor Serv., 148 Misc 2d 664 [1990] [special relationship needed for damages arising from breach of contract or its negligent performance]; Ritner v Harris, Upham & Co., 46 Misc 2d 567 [1965] [defendant must be engaged in public or quasi-public business]; Kupferman v Pakistan Intl. Airlines, 108 Misc 2d 485 [1981] [damages for discomfort, annoyance and harassment]; Chelini v Nieri, 32 Cal 2d 480, 196 P2d 915 [1948]). In addition, Mt. Hope needs sufficient incentive to properly fulfill its fiduciary obligations (see, e.g., Bogner v General Motors Corp., 117 Misc 2d 929, 933 [1982] *1059 [without a "meaningful remedy” there is "little incentive to take reasonable measures to avoid the constant recurrence of the (same) situation”]). Damages for plaintiffs distress and mental anguish will be $300 ($50 for each visit during 1991 to 1994).