OPINION OF THE COURT
Joseph Harris, J.
*287 PLEADINGS
Defendants move pursuant to CPLR 3211 (a) (7) for an order dismissing the complaint for failure to state a cause of action; and/or (2) for failure to plead libel or slander with the necessary particularity required by CPLR 3016 (a) and 3013. Plaintiff opposes the motion and cross-moves pursuant to CPLR 3025 (b) for an order permitting plaintiff to serve an amended complaint or, in the alternative, for the opportunity to conduct discovery pursuant to CPLR 3211 (d).
RESPECTING THE MOTION TO AMEND
The determination whether to allow an amendment to a pleading rests with the sound discretion of the court and absent prejudice or surprise directly resulting from the delay in moving to amend, leave should be freely given. (Esposito v Billings, 103 AD2d 956.) Establishing prejudice sufficient to deny a motion for leave to amend requires proof "that the nonmoving party has been hindered in the preparation of its case or has been prevented from taking some measure in support of its position”. (Dumesnil v Proctor & Schwartz, 199 AD2d 869, 870 [3d Dept 1993].)
Here, defendants have not yet answered and thus have not taken a position which they now must change or forfeit a right in reliance upon the plaintiff’s initial complaint. In short, defendants have not shown that they will suffer any prejudice in the event that the plaintiffs motion to amend the complaint is granted.
Accordingly, plaintiffs motion for leave to serve an amended complaint is granted. In determining the defendants’ motion to dismiss, the court will be assessing the plaintiff’s amended complaint.
FACTS
The complaint alleges that on or about June 17, 1996, a bridal photograph of the plaintiff and her husband was published in the wedding section of the Daily Gazette, a newspaper published in the City of Schenectady, New York, along with several photographs of recent newlyweds. As set forth in the complaint: "[0]n or about June 17, 1996, at approximately 7:00 a.m. and for a portion of the broadcast that morning,” the individual defendants (being a radio station and employees thereof) "broadcast offensive, vindictive, disparaging, derogatory, depreciatory, atrocious, contemptuous, *288 derisive, contumelious, ridiculing, abusive, calumnious, scurrilous, demeaning and outrageous remarks concerning * * * the plaintiffs physical attractiveness and desirability, as well as her full name, her place of employment [being a competing radio station], her position of employment and the names of her supervisors and her relations with said supervisors.” "[S]aid slanderous remarks were part of a 'routine’ of the individual defendants called the 'Ugliest Bride Contest’.”
During the "Ugliest Bride Contest”, the individual defendants referred to the bridal pictures appearing in the local newspapers published weekly, and invited their listening audience to vote for the "Ugliest Bride” of the brides so pictured. During the "Ugliest Bride Contest”, the individual defendants "would encourage the listening audience themselves to volunteer their own unkind and slanderous remarks concerning the brides so pictured”.
On or about June 17, 1996, the individual defendants "varied from their customary and past routine of the 'Ugliest Bride Contest’ and intentionally and recklessly expended their offensive, vindictive, disparaging, derogatory, depreciatory, atrocious, contemptuous, derisive, contumelious, ridiculing, abusive, calumnious, scurrilous, demeaning and outrageous remarks to include plaintiffs full name, her place of employment, her position of employment and the names of her supervisors with full knowledge that plaintiff was employed at a competing broadcasting company who owned and operated competing radio stations”.
The plaintiff claims that both she and her supervisors and colleagues overheard the radio broadcast on June 17, 1996.
THE LAW
In reviewing a motion to dismiss based on an alleged failure to state a cause of action, it is incumbent upon the court to ascertain whether or not the pleading states any cause of action recognized by law. (Holly v Pennysaver Corp., 98 AD2d 570.) In so doing, the reviewing court must liberally construe the complaint in a light most favorable to the plaintiff and all factual allegations asserted therein must be adopted as true. (Burlew v American Mut. Ins. Co., 99 AD2d 11, affd 63 NY2d 412.) Moreover, the plaintiff is entitled to the benefit of all favorable inference’s which may be drawn from the complaint and is deemed to have alleged whatever may be drawn from the complaint. (Underpinning & Found. Constructors v Chase Manhattan Bank, 46 NY2d 459.)
*289 If from the four corners of the pleading, regardless of its form and draftsmanship, factual allegations are discernable which taken together manifest any cause of action cognizable at law, the pleading states a cause of action and the motion will fail. (See, Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3211:24, at 38.)
If the plaintiff’s claims were an action for defamation "[t]he key inquiry [would be] whether [the] challenged expression, however labeled by defendant, would reasonably appear to state or imply assertions of objective fact. In making this inquiry, courts cannot stop at literalism. The literal words of challenged statements do not entitle a media defendant to 'opinion’ immunity or a libel plaintiff to go forward with its action. In determining whether speech is actionable, courts must additionally consider the impression created by the words used as well as the general tenor of the expression, from the point of view of the reasonable person.” (Immuno AG. v Moor-Jankowski, 77 NY2d 235, 243 [1991].)
"Given the purpose of court review — to determine whether the reasonable [listener] would have believed that the challenged statements were conveying facts about the libel plaintiff — we believe that an analysis that begins by looking at the content of the whole communication, its tone and apparent purpose (Steinhilber v Alphonse, 68 NY2d, at 293, supra) better balances the values at stake than an analysis that first examines the challenged statements for express and implied factual assertions, and finds them actionable unless couched in loose, figurative or hyperbolic language in charged circumstances (see generally, Note, Fact and Opinion in Defamation: Recognizing the Formative Power of Context, 58 Fordham L Rev 761 [1990]).” (Immuno AG. v Moor-Jankowski, 77 NY2d 235, 254, supra.)
Considering the content and general tenor of the defendants’ entire radio program from the point of view of a reasonable person, distasteful as it may be, it is clear that the challenged speech would not be viewed by a reasonable listener as conveying actual facts about plaintiff, but at the most, an opinion. One’s physical attractiveness and desirability or lack thereof is, in fact, a matter of subjective opinion, even though under the circumstances it may not give rise to a qualified privilege. *290 For more than a century it has been widely recognized that libleauty is in the eyes of the beholder."[1]
But plaintiff's claim is not based on the law of defamation. It is based on the law of intentional or reckless infliction of emotional distress, even though overtones of defamation are present.
A statement is defamatory if it tends to expose the plaintiff to public hatred, contempt, ridicule or disgrace-that is, if it would tend to lead the average person in the community to form an evil or bad opinion of the plaintiff. (PJI 3:24 [1997 Supp].)
The tort of "intentional infliction of emotional distress" is defined in PJI 3:6 (1997 Supp) as follows: "One who (intentionally and for the purpose of causing severe emotional distress, recklessly[2]) conducts (himself, herself) toward another person in a manner so shocking and outrageous that it exceeds all reasonable bounds of decency is liable to such person for any resulting severe emotional distress."[3] (See also, Restatement [Second] of Torts, as adopted by the Court of Appeals in Fischer v Maloney, 43 NY2d 553, 557; Murphy v American Home Prods., 58 NY2d 293, 303.)
The constitutional rule, limited to defamation of public figures, allows public figures to recover for libel or defamation only when they can prove both that the statement was false and that the statement was made with the requisite level of culpability (that is, actual malice or reckless disregard). (See, New York Times Co. v Sullivan, 376 US 254 [1964]; Time, Inc. v Hill, 385 US 374 [1967]; Hustler Mag. v Falwell, 485 US 46 [1988].)
In Street v New York (394 US 576, 592 [1969]) the United States Supreme Court wrote: "It is firmly settled that * * * the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers." (Emphasis added.) In Hustler (supra, at 56) the Court wrote: "these oft-repeated First Amendment principles, like other principles, are subject to limitations. We recognized in Pacifica Foundation [Federal Communications Commn. v *291 Pacifica Found., 438 US 726, 747 (1978)], that speech that.is ' "vulgar,” "offensive,” and "shocking” ’ is 'not entitled to absolute constitutional protection under all circumstances.’ * * * In Chaplinsky v. New Hampshire, 315 U. S. 568, (1942), we held that a State could lawfully punish an individual for the use of insulting ' "fighting” words — those which by their very utterance inflict injury or tend to incite an immediate breach of the peace.’ * * * These limitations are but recognition of the observation in Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., 472 U. S. 749, 758 (1985), that this Court has 'long recognized that not all speech is of equal First Amendment importance.’ ”
Plaintiff in Hustler (supra) argued that a standard different from New York Times Co. v Sullivan (supra) should apply in the instant case because there the State sought to prevent not reputational damage, but the severe emotional distress suffered by the person who was the subject of an offensive publication. In plaintiff’s view and in view of the court below (US Court of Appeals for 4th Circuit), so long as the utterance was intended to inflict emotional distress, was outrageous, and did in fact inflict serious emotional distress, it was of no constitutional import whether the statement was fact or an opinion, or whether it was true or false. It was the intent to cause injury that was the gravamen of the tort, and the State’s interest in preventing emotional harm simply outweighed whatever interest a speaker might have in speech of the complained-of type. (See, Hustler Mag. v Falwell, 485 US 46, 53, supra.)
This argument was rejected by the Supreme Court, but only because plaintiff was a public figure. Held the Court: "We conclude that public figures and public officials may not recover for the tort of intentional infliction of emotional distress by reason of publications such as the one here at issue without showing in addition that the publication contains a false statement of fact which was made with 'actual malice,’ i.e., with knowledge that the statement was false or with reckless disregard as to whether or not it was true.” (Hustler Mag. v Falwell, 485 US 46, 56, supra.) By implication the rule does not apply to private persons. In the instant case plaintiff is a private person; neither marriage nor newspaper bridal photographs convert a private person into a public figure.
The First Amendment was not enacted to enable wolves to parade around in sheep’s clothing, feasting upon the character, reputation and sensibilities of innocent private persons. It was enacted to assure a free interchange of ideas. Such is not the *292 case here. In the instant case the speech is in no way ideational and not being ideational it cannot give rise to an opinion that would create a privilege under the First Amendment, neither absolute nor qualified. For an opinion cannot exist without an "idea” on which to attach itself. At the most it is a feeble and bad taste attempt at humor.
It is notable in the instant case that whereas the usual and customary "Ugliest Bride Contest” theretofore never identified the bride chosen for ridicule, in the instant case plaintiff’s name, address, place of employment (a competing radio station), and the names of her supervisors thereat, were fully set forth, so that plaintiff was fully and readily identified. This raises the specter of a possibly high level of vindictiveness on the part of defendants, raising the reasonable possibility that plaintiff was unfairly transformed by defendants into a pawn in a battle between competing broadcasters, with a specific intent to injure. These are matters that must be explored at a trial.
Respecting entertainment and "humorous” language, the Appellate Division, Second Department, in Frank v National Broadcasting Co. (119 AD2d 252, 261-262 [1986]), held: "We hold today that in certain situations and under some circumstances, the authors of humorous language will be insulated from liability in defamation cases even where the comic attempt pokes fun at an identifiable individual. The line will be crossed, however, when humor is used in an attempt to disguise an attempt to injure; at that point a jest no longer merits protection, because it ceases to be a jest. As was the case in Triggs v Sun Print. & Pub. Assn. [179 NY 144], the defense of humor will not immunize the authors of a malicious or abusive attack upon a plaintiff’s character or reputation.”[4]
All of the elements of the tort of intentional infliction of emotional distress have been met herein as a matter of law. It *293 is for the jury to determine whether they have been met as a matter of fact.
Plaintiff was demeaned and injured by the speech and conduct of defendants, not only as a woman, but as a bride, and a human being at what ought to be one of the most beautiful and memorable occasions of life. The court cannot say as a matter of law that the speech and conduct of the defendants did not exceed the bounds of decency. That, once again, must be determined by a jury as a matter of fact.
For the foregoing reasons, the court finds that plaintiff’s complaint states a cognizable cause of action against the defendants for the tort of intentional infliction of emotional distress. Accordingly, the defendants’ motion to dismiss plaintiff’s amended complaint is denied.
[Portions of opinion omitted for purposes of publication.]

. Hungerford, Molly Bawn (1878).

. An act is reckless when it is done in such a manner and under such circumstances as to show utter disregard of the consequences that may follow. (Ibid.)

. Whether the conduct of a defendant toward a plaintiff is so outrageous and shockIng that it exceeds all reasonable bounds of decency is measured by what the average member of the community would tolerate. (Ibid.)

. As the basis for its holding, the Court wrote:
"In some instances, the protection of the 1st Amendment approaches the absolute: for example, the expression of one’s opinion, no matter how pernicious, distasteful or unpopular it may be, is not actionable on the theory that defamation requires falsity, and in this country 'there is no such thing as a false idea’ [citations omitted].
"The terms 'humor and comedy’ are not and cannot be synonymous with the term 'opinion’. As forms of expression, humor and comedy have never been held .to be entitled to absolute or categorical 1st Amendment protection [citing Triggs v Sun Print. & Pub. Assn., supra] * * * Indeed, the danger implicit in affording blanket protection to humor or comedy should be obvious, for surely one’s reputation can be as effectively and thoroughly destroyed with ridicule as by any false statement of fact. 'The principle is clear that a *293 person shall not be allowed to murder another’s reputation in jest’ [citation omitted].” (Frank v National Broadcasting Co., 119 AD2d 252, 257, supra.)