OPINION OF THE COURT
Thomas A. Dickerson, J.
Ellen and John Oxman (the Oxmans) decided to hire an au pair to care for their children, Genevieve, age 4, and William, age 3.
Au Pair Programme USA
The Oxmans contacted Au Pair Programme USA (AP USA), a company based in Salt Lake City, Utah. AP USA is in the business of recruiting, screening, marketing and monitoring foreign nationals who provide child care services to families in the United States. AP USA sent the Oxmans a host family application form (the Host Application) (defendant’s exhibit A), a letter from the defendant, Eva Amoroso (Ms. Amoroso) (plaintiff’s exhibit 2) and a host family agreement form (the Agreement) (plaintiff’s exhibit 1).
The Host Family Application Form
The Oxmans completed a host family application form (defendant’s exhibit A) describing Mrs. Oxman as an "opera singer free lance” and her husband as a "banker * * * [who] travels frequently”. They requested an au pair of German or English nationality, "someone who truly loves small children” and "with a good attitude”.
The Community Counselor
Ms. Amoroso, a resident of Yonkers, New York, was a "Community Counselor” employed by AP USA to interview the Ox-mans, determine the "kind of Au Pair you are looking for”, give the newly arrived au pair an "orientation at your home”, *776 "keep in touch with you and your Au Pair once a month”, arrange events for local au pairs ("I also will be sending your Au Pair a newsletter every other month”) and otherwise be available to resolve any disputes between au pairs and host families.
Ms. Amoroso was paid on a commission basis by AP USA and was described in the Agreement as both an agent ("Community Counselor * * * or other agents of the Program”) and not an agent ("no authority to act as an agent”) of AP USA. Ms. Amoroso also described herself as "an expert in” "cultural exchange” "and working with Au Pair Program U.S.A.”
Soliciting Business In New York State
Ms. Amoroso solicited the Oxmans’ business by describing what au pairs do* and AP USA’s costs ("Total cost for the first year is $3,885.00”), benefits ("Your Au Pair will have their own complete insurance coverage, flight to and from America, visa and application process, screening and interview process as well as counseling * * * during the twelve months”) and rebates ("[AP USA] will also give you a $50.00 discount for every host family you refer to their agency” [plaintiffs exhibit 2]).
Verification Of Au Pair References
Ms. Amoroso promised that AP USA would verify the accuracy of a prospective au pair’s references ("Another great fact is that references are checked, and you see all that included on the Au Pair’s application”).
Host Family Agreement Form
Mrs. Oxman signed the Host Agreement which contained the following clauses:
*777 The Refund Policy
"The refund policy is available through the end of the first six months of the Programme. First, as Host Family, we must submit a written letter to the Programme requesting a refund of $210.00 for each full month remaining in the one year commitment * * * After six months of the one year stay have been completed, there will be absolutely no refund”.
Choice Of Law
"The terms and conditions of this contract shall be construed under the laws of the State of Utah.”
Forum Selection
"Any and all lawsuits * * * involving any issue or contractual requirements under this agreement shall * * * be brought in the State of Utah.”
Host Family Interview
Ms. Amoroso interviewed the Oxmans and found their home to be "beautiful, spacious”, the Oxmans to be a suitable family and the situation "Satisfactory. This is a wonderful opportunity for an AP who can work well with Ms. Oxman” (defendant’s exhibit B).
The Au Pair’s Application Form
Upon receipt of the Host Application and Ms. Amoroso’s interview results, AP USA sent the Oxmans information concerning a prospective au pair, Ms. Andrea Schrag (Ms. Schrag), residing in Germany. The information consisted of Ms. Schrag’s application form to AP USA (the Au Pair Application) and several references (plaintiff’s exhibit 2).
Experience Teaching Handicapped Children
The questions and answers in the Au Pair Application were extensive. Of particular interest to the Oxmans were Ms. Schrag’s representations of her work experience, e.g., "8/93-8/94 teacher for handicapped children” and "assistant in home for handicapped children”. The Oxmans’ child, Genevieve, had a hearing disorder which required her to wear a hearing aid. The Oxmans considered her "handicapped” and in need of the special care which could be provided by an au pair experienced in caring for handicapped children.
AP USA’s Verification
Upon reading the Au Pair Application Mrs. Oxman telephoned Heather at AP USA headquarters in Salt Lake City. *778 Mrs. Oxman liked Ms. Schrag’s credentials, particularly, her experience in caring for and teaching handicapped children. Heather confirmed that AP USA had verified the accuracy of the entire Au Pair Application including Ms. Schrag’s work experience (plaintiffs exhibits 3, 4, 5 ["I spoke with you personally, Heather, at which time you confirmed the information you gave us”]).
The Unpleasant Reality
The Oxmans relied upon the Au Pair Application, upon Ms. Amoroso’s promise that AP USA would verify the accuracy of the Au Pair Application and upon AP USA’s representation that it, in fact, had verified the Au Pair Application, entered into the Agreement and hired Ms. Schrag. The Oxmans paid AP USA $4,205 (plaintiff’s exhibit 6) of which Ms. Amoroso received an undisclosed percentage.
Shortly after her arrival the Oxmans learned that Ms. Schrag had no work experience whatsoever with handicapped children. Apparently. Ms. Schrag’s " 'handicapped experience’ was that she worked and lived with sexually abused juvenile delinquents in a reform school setting * * * they threatened her, held her at knife point * * * a far cry from hands-on experience with handicapped children” (plaintiff’s exhibit 5). In addition, Ms. Schrag "was overtly abusive [to the Oxmans’ children]”, "consistently impatient with both my children”, "berated and belittled my daughter”, "cursed in front of me and my children” and "[she wore a] T-shirt that said 'F...... volleyball’ in small print” (plaintiff’s exhibit 5).
The Lawsuit
The Oxmans fired Ms. Schrag, set forth their many complaints to AP USA (plaintiff’s exhibit 5) and demanded a full refund of the $4,205 contract price. Relying upon its refund policy in the Agreement AP USA agreed to refund only $2,310. The Oxmans responded by commencing this lawsuit alleging fraud and seeking the unreimbursed balance of $1,885.
Denials And Admissions
Ms. Amoroso appeared at trial represented by an attorney retained and paid by AP USA (the AP Attorney). While denying that she was "doing business as Au Pair Program USA” Ms. Amoroso admitted working for and being paid by AP USA. Ms. Amoroso also admitted sending a letter (plaintiff’s exhibit 2) to the Oxmans soliciting their business on behalf of herself *779 and. AP USA and denied none of the statements and representations therein.
Motions To Dismiss
The AP Attorney asserted that the Oxmans were bound by the refund policy in the Agreement which limited their damages, if any, to the refund of $2,310 already proffered by AP USA. In addition, the AP Attorney sought to dismiss the lawsuit on two grounds. First, the Agreement contained a forum selection clause ("Any and all lawsuits * * * involving any issue or contractual requirements under this agreement shall * * * be brought in the State of Utah”) which prohibits the Oxmans from suing Ms. Amoroso or AP USA in a New York State court. Second, the Agreement contained a choice of law clause ("The terms and conditions of this contract shall be construed under the laws of the State of Utah”) which also requires the dismissal of this lawsuit.
DISCUSSION
Based upon the foregoing the court finds that the plaintiff has asserted the following causes of action: (1) breach of contract, (2) negligent misrepresentation, (3) rescission based upon (a) want of consideration, (b) failure of consideration and (c) misrepresentations, and (4) violation of General Business Law § 349 (deceptive, misleading and unfair business practices).
The Au Pair Concept
The au pair concept is a useful form of cultural exchange which encourages young foreign nationals to come to the United States for one year, take educational courses, reside with a host family and perform light housekeeping and child care services. Organizations such as AP USA are governed, in part, by Federal regulations ("Au Pair Programme is a government supervised organization. The Programme organizers are authorized by the United States Government to prepare visas and conduct the Au Pair Programme” [plaintiff’s exhibit 2]). The au pair concept is popular with host families because it provides relatively inexpensive child care services delivered by educated, motivated and, generally, courteous foreign nationals.
Motions To Dismiss Denied
Defendant’s motions seeking to dismiss this lawsuit are denied for the following reasons. Forum selection clauses are *780 among the most onerous and overreaching of all clauses that may appear in consumer contracts. The impact of these clauses is substantial and can effectively extinguish legitimate consumer claims, e.g., plaintiff’s claim herein of $1,885 is, practically speaking, unenforceable except in this Small Claims Court since the costs of retaining an attorney in and traveling to Utah would far exceed recoverable damages.
The United States Supreme Court declared in Carnival Cruise Lines v Shute (499 US 585, 595 [1991]) that "forum-selection clauses contained in form passage contracts are subject to judicial scrutiny for fundamental fairness”. To be enforceable such clauses must be noticeable (see, e.g., Klinghoffer v Achille Lauro, 1988 AMC 636, 638 [SD NY 1987] ["the ticket does not give fair warning to the American citizen passenger that he or she is renouncing and waiving his or her opportunity to sue in a domestic forum over a contract made and delivered in the United States”]) and reasonable (see, e.g., Berman v Cunard Line, 771 F Supp 1175 [SD Fla 1991] [forum selection clause transferring case from Florida to New York unfair on grounds of fraud and overreaching]). The subject forum selection clause is in small, undistinguishable print which is virtually unnoticeable (see, e.g, Lerner v Karageorgis Lines, 66 NY2d 479 [1985] [consumer contracts entered into in New York State must be in 10-point type to be enforceable unless the transaction is governed by maritime law which permits 4-point type]). It is also unreasonable since it allows defendant to solicit and sell its services in New York State while at the same time chilling and extinguishing meritorious claims by forcing injured consumers to bring suit in a distant and economically inaccessible forum.
Defendant’s choice of law clause fares no better. It too is in small and undistinguishable print unfit for consumer transactions (Lerner v Karageorgis Lines, supra). However, assuming arguendo that this clause is reasonable (see, eg., Milanovich v Costa Crociere, 954 F2d 763, 768 [DC Cir 1992]), does not involve a claim of fraud as herein and does not contravene the public policy of this State to protect consumers from fraud and overreaching (see, eg., Note, New York Creates a Private Right of Action to Combat Fraud: Caveat Venditor, 48 Brook L Rev 509, 553-572 [1982]), defendant has failed to demonstrate how and in what relevant manner the law of Utah and New York State differ and whether that difference, if any, requires the dismissal of this lawsuit (see, eg., Feldman v Acapulco Princess Hotel, 137 Misc 2d 878 [1987] [comparison of New York and Mexican law on the issue of damages]).
*781 Breach Of Contract
The plaintiff entered into a contract wherein the defendant agreed to supply an au pair, Ms. Schrag, who was "a young, vibrant person who is interested in working with children * * * [and would render] good quality care” (plaintiff’s exhibit 2) and who had experience teaching and caring for handicapped children. In fact, Ms. Schrag had no experience caring for handicapped children, was abusive to, berated, belittled and cursed in front of plaintiff’s children and wore clothing with profane language printed thereon. Clearly, Ms. Schrag was untrained and unfit to serve as an au pair for plaintiff’s children. The defendant breached its contract with the plaintiff in a substantial and material manner and is liable for all appropriate damages including the return of the full contract price.
Defendant’s refund policy seeking to limit plaintiff’s recoverable damages to $2,310 is unconscionable and null and void under the circumstances of this case. If defendant had verified Ms. Schrag’s work experience, as it had promised to do, it would have known that she was insensitive, uncaring and unfit to render the special care which handicapped children need. To enforce defendant’s refund policy would render the transaction and the relationship between the plaintiff and the defendant meaningless (see, e.g., Klakis v Nationwide Leisure Corp., 73 AD2d 521, 524 [1979] [dissenting mem] [disclaimer strikes "at the heart of the performance bargained for under the agreement”]; Walker v Winks Furniture, 168 Misc 2d 265, 269 [1996] [disclaimers void]).
Negligent Misrepresentation
AP USA assumed a duty to verify the truth and accuracy of Ms. Schrag’s application form. And it did not. AP USA promised the plaintiff that it had verified Ms. Schrag’s work experience, particularly, with handicapped children. And it did not. Ms. Amoroso promised that AP USA would verify the truth and accuracy of Ms. Schrag’s application. And she did nothing to verify that AP USA had, in fact, verified Ms. Schrag’s application. The plaintiff relied upon the defendant’s representations of verification and entered into the Agreement. The defendant knew or should have known that Ms. Schrag’s application contained false statements. The defendant has a special relationship with the plaintiff in providing a child care giver who was interested in and trained in caring for handicapped children. The defendant is liable to the *782 plaintiff for all appropriate damages arising from its negligent misrepresentation (see, e.g., Marcus v Zenith Travel, NYLJ, Nov. 19, 1990, at 25, col 3 [Sup Ct, NY County], affd 178 AD2d 372 [1991]; Pellegrini v Landmark Travel Group, 165 Misc 2d 589, 594-595 [1995]).
Rescission
The failure of defendant to deliver an au pair who was experienced in caring for handicapped children and who was not abusive to plaintiff’s children was so complete that rescission of the Agreement is justified. Whether viewed as a want of consideration or a failure of consideration, it is clear that plaintiff received little of value from the defendant. (22 NY Jur 2d, Contracts, §§ 328, 439, 464 [1982 ed].)
Rescission may also be granted upon a showing of misrepresentations which are fraudulent or deceptive in nature (see, e.g., Brown v Hambric, 168 Misc 2d 502 [1995]; Rossi v 21st Century Concepts, 162 Misc 2d 932 [1994]). The failure of defendant to deliver an au pair with experience in caring for handicapped children and who was not abusive was deceptive and amounts to gross misrepresentations (see, e.g., Hertz Corp. v Attorney-General of State of N. Y., 136 Misc 2d 420 [1987]).
Violation Of General Business Law § 349
General Business Law § 349 prohibits deceptive business practices and applies to the sale of a variety of goods and services (see, e.g., Walker v Winks Furniture, supra, 168 Misc 2d, at 270 [furniture]; Rossi v 21st Century Concepts, supra, 162 Misc 2d, at 938-939 [pots and pans]; Brown v Hambric, supra, 168 Misc 2d, at 508-509 [educational services]).
General Business Law § 349 is a broad, remedial statute (see, e.g., Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, 85 NY2d 20 [1995]; see also, Note, New York Creates a Private Right of Action to Combat Fraud: Caveat Venditor, op. cit.) directed towards giving consumers a powerful remedy. The elements of a violation of General Business Law § 349 are (1) proof that the practice was deceptive or misleading in a material respect and (2) proof that plaintiff was injured (see, Givens, Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 19, General Business Law art 22-A, 1996 Pocket Part, at 166; McDonald v North Shore Yacht Sales, 134 Misc 2d 910 [1987]; Geismar v Abraham & Straus, 109 Misc 2d 495 [1981]). There is no requirement under General Business Law § 349 that plaintiff prove that defendant’s *783 practices or acts were intentional, fraudulent or even reckless. Nor does plaintiff have to prove reliance upon defendant’s deceptive practices. In this case defendant’s promises to verify the accuracy of Ms. Schrag’s representations concerning her work experience, deliver an au pair experienced in caring for handicapped children and who was not abusive to plaintiffs children were false, deceptive and misleading. Defendant has violated General Business Law § 349 and is liable for all damages appropriate thereunder.
DAMAGES
The court awards the following damages to the plaintiff.
First, damages will include the unreimbursed portion of the contract payment of $1,885.
Second, pursuant to General Business Law § 349 (h) the court finds that defendant wilfully violated General Business Law § 349. Although the court would like to treble plaintiffs actual damages of $1,885, this amount exceeds the maximum $1,000 permissible (see, Hart v Moore, 155 Misc 2d 203 [1992]).

 "Well an Au Pair is a live-in child care provider. They are looked at as part of the family, like an older brother or sister. They usually work 45 hours a week or less with your children and do light housekeeping. Any chore connected with your children can be done by your Au Pair. In return, the Au Pair would receive their own private room, meals and $115.00 a week pocket money [allowance] * * * Au Pairs are an excellent alternative for families with young children at home and who work unusual hours * * * The beauty of the program is you are not tied to a day care, your child is receiving good quality care in your home * * * [Your children] are * * * being exposed to a new culture as well as working with a young, vibrant person who is interested in working with children” (plaintiff’s exhibit 2).