OPINION OF THE COURT
Thomas A. Dickerson, J.
THE WEDDING SINGER
The plaintiff, Bridget Griffin-Amiel (Bridget), and Michael Amiel (Michael), began planning their wedding nearly a year in advance. Of particular importance was the selection of a wedding singer to perform at their reception.
The Wedding Showcase
The defendant, Frank Terris Orchestras (Terris), provides musicians and singers for weddings and other functions. Terris advertises widely and encourages prospective brides and grooms to attend its wedding showcase[1] (Showcase) which features a five- or six-piece orchestra and seven or eight singers. Typically, couples will select one or two singers to perform along with the orchestra. Bridget and Michael attended several of Terris’ Showcases and liked the style and melodious sounds of the singer Paul Rich.
*73 The Wedding Singer Contract
Bridget met with Terris’ sales representative, Kathleen Caucci (Caucci), to discuss her wedding plans. Bridget informed Caucci that she and Michael liked Paul Rich and wanted him to be their wedding singer. After Caucci guaranteed that Paul Rich would sing at her wedding, Bridget signed a Terris’ contract providing for a five-piece orchestra and two singers, Paul Rich and Gloria Carpenter, in consideration for the payment of $3,275, of which Bridget gave Caucci a deposit of $1,275.
The Disclaimer Of Liability
The contract contained the following disclaimer of liability: “4. Performance: Frank Terris Orchestras, Ltd. agrees to provide the musical services set forth above but shall be free without liability to cease services [due] to act(s) of God or circumstances beyond its control”.
The Wedding Singer Doesn’t Show
The wedding was scheduled to begin at 6:30 p.m. on March 14, 1998. At 5:30 p.m. a five-piece Terris orchestra showed up along with the singer Gloria Carpenter. However, the melodious Paul Rich, the centerpiece of Bridget’s plans for her wedding reception and the primary reason why she hired the defendant, failed to appear. Instead of Paul Rich, Terris substituted the wedding singer, Tony Avena, of whom Bridget and Michael had never heard.
The Magic Is Missing
The Terris’ musicians played and the singers sang but the magic that Bridget and Michael expected Paul Rich to bring to their wedding reception was noticeably absent. Some weeks later they filed a complaint with Terris. “I am writing to request a partial refund of $1637.50 * * * I also want to let you know that your business practices stink * * * I contracted * * * for Paul Rich * * * to perform at my wedding * * * On the day of my wedding, a different person showed up * * * At the very least, you owed me a phone call to tell me that Paul was no longer with you and that he would not be performing * * * At the time of booking, I specifically asked how could you guarantee me that particular singer so far in advance”.
Terris Blames Rich
In a written response, and later at trial through the testimony of Tony Avena, Terris blamed Paul Rich for refusing *74 to perforin (“Mr. Paul Rich had not indicated to our office that there was a problem fulfilling his obligations * * * However, last minute difference could not be corrected”), proclaimed the wedding a success nonetheless (“Mr. Tony Avena and Gloria Carpenter along with their fine musicians confirmed your evening was a great success”) and offered a $1,000 refund (plaintiffs exhibit 5 [“find enclosed a reasonable refund check * * * for any misunderstanding caused by Mr. Rich”]).
The Lawsuit
After Terris refused to refund additional sums Bridget commenced this lawsuit seeking the return of the full contract price minus the partial refund or $2,275 because “they sent a substitute”. '
DISCUSSION
Based upon the foregoing, the court finds that the plaintiff has stated cognizable causes of action for (1) breach of contract, (2) negligent misrepresentation, and (3) violation of General Business Law § 349 (misleading and deceptive business practices).
Weddings Are Special
Weddings are unique and, hopefully, once in a lifetime events. Equally important is the wedding reception where family and friends celebrate and congratulate the newly married couple. Notwithstanding some judicial skepticism[2] (Matter of Anonymous, 44 Misc 2d 38, 39 [1964] [“There is little reason to believe that the permanency or happiness of a marriage bears any relation to the amount spent on the wedding”]), brides, grooms and parents spend extraordinary sums and expect the wedding and the reception to be magical and memorable in every respect. Generally, the courts agree (see, e.g., Levin v Halston Ltd., 91 Misc 2d 601, 602 [1977] [“A daughter’s wedding is a milestone event in a parent’s life”]; Esposito-Hilder v SFX Broadcasting, 171 Misc 2d 286, 293 [1996], affd 236 AD2d 186 [3d Dept 1997] [“Plaintiff was demeaned and injured by the speech and conduct of defendants (during a radio show *75 ‘ “routine” * * * called the “Ugliest Bride Contest” ’),[3] not only as a woman, but as a bride, and a human being at what ought to be one of the most beautiful and memorable occasions of life”]; Garther v Tipery Studios, 334 So 2d 758, 761 [La Ct App 1976] [“bride and groom (were) deprived of the full enjoyment, which they can rightfully expect, of pictures commemorating their wedding”]; Mitchell v Shreveport Laundries, 61 So 2d 539, 541 [La Ct App 1952] [“Where the contract has for its object the gratification of some intellectual enjoyment, whether in religion, morality or taste”]).
Wedding Lawsuits Are Special Too
Besides magic and memories weddings often spawn litigation involving ill-fitting, soiled, missing or stolen wedding clothes (see, e.g., Ross v Kirkeby Hotels, 8 Misc 2d 750 [1st Dept 1957] [honeymoon clothing stolen from car during wedding]; Sagnia-Blythe v Gamblin, 160 Misc 2d 930 [1994] [two-hour delay in the delivery of ill-fitting bridesmaids’ dresses]; Levin v Halston Ltd., supra [“custom-made designed dress” “was totally a disaster”]; Mitchell v Shreveport Laundries, supra [groom forced to marry and honeymoon in “soiled suit”]); no-show wedding bands (see, e.g., Deitsch v The Music Co., 6 Ohio Misc 2d 6, 7, 453 NE2d 1302, 1303 [1983] [wedding band failed to appear at reception; “(a)fter much wailing and gnashing of teeth * * * some stereo equipment (provided the music)”]); unprofessional wedding photos (see, e.g., Garther v Tipery Studios, supra, at 761 [“less than professional quality of the wedding pictures”]); payment disputes (see, e.g., Nakash v Hilton Hotel Corp., 184 AD2d 218 [1992] [bride’s father sues hotel for fraud in overcharging $31,925 for reception]; Bruno v Guerra, 146 Misc 2d 206 [1990] [bride’s father sues former fiancé for $28,000 prepaid expenses of canceled wedding]); and accidents arising from excessive alcohol consumption (see, e.g., Dynarski v U-Crest Fire Dist., 112 Misc 2d 344 [1981] [14-year-old waitress dies after being fed excessive quantities of alcohol by wedding guests]); fights (see, e.g., Pulitano v Suffolk Manor Caterers, 245 AD2d 279 [2d Dept 1997] [fight between guests at two different wedding receptions]); and slips and falls (see, e.g., Lee v Durow’s Rest., 238 AD2d 384, 385 [1997] [bridesmaid *76 “tumbled to the dance floor” after collision with participants in “human wheelbarrow race”]; West v United States Fid. & Guar. Co., 405 So 2d 877 [La Ct App 1981] [handicapped person injured attempting to dance the “cha-cha”]).
Breach Of Contract
The defendant entered into a contract providing that a five-piece orchestra and two singers, Paul Rich and Gloria Carpenter, would perform at plaintiffs wedding reception. The plaintiff attended defendant’s Showcases before selecting Paul Rich to be her wedding singer. The defendant even guaranteed that Paul Rich would sing at plaintiffs wedding reception. The plaintiff relied upon defendant’s promises, paid the agreed-upon price and was disappointed, humiliated and embarrassed when Paul Rich failed to appear. The substituted wedding singer, Tony Avena, was by no means equivalent to Paul Rich.
The defendant has breached its contract in a material respect by failing to produce Paul Rich (see, e.g., Deitsch v The Music Co., supra, 6 Ohio Misc 2d 6, 453 NE2d, at 1303 [wedding band]; Sagnia-Blythe v Gamblin, supra [bridesmaid dresses]; Garther v Tipery Studios, 334 So 2d, supra, at 761 [wedding photos]) and by failing to verify and confirm that Paul Rich would and could honor defendant’s contractual promises to the plaintiff (see, e.g., Oxman v Amoroso, 172 Misc 2d 773 [1997] [failure to verify au pair’s work experience]; Pellegrini v Landmark Travel Group, 165 Misc 2d 589 [1995] [failure to verify or confirm tour operator’s refund provisions]).
Disclaimer Void
To the extent defendant relies upon language in its contract (“shall be free without liability to cease services [due] to act[s] of God or circumstances beyond its control”) to absolve itself of liability its reliance is not well founded. To enforce this disclaimer would encourage defendant to promise its most popular singer to everyone and then substitute lesser performers with impunity (see, e.g., Note, New York Creates A Private Right Of Action To Combat Consumer Fraud: Caveat Venditor, 48 Brook L Rev 509, 558, n 207 [1982] [“ ‘Bait advertising’ is the advertising of merchandise without the bona fide intention of selling it in order to lure consumers into the sales environment and switch the consumer to a different item which is more expensive or better serves the seller’s purposes”]; Kozlowski v Sears, NYLJ, Nov. 6, 1997, at 27, cols 3, 4 [Yonkers City Ct] [“such a clause is overreaching and unconscionable if *77 for no other reason than it encourages sloppy and careless installation of Sear(s’) windows”]).
Defendant’s disclaimer clause is unconscionable (see, e.g., Hertz Corp. v Attorney-General of State of N. Y., 136 Misc 2d 420, 424 [1987] [“The concept has been employed primarily in the area of consumer protection, in an attempt to deal with the ‘ “neverending stream of consumer gypsters and fraudulent operators” ’ ”] and null and void as striking at the heart of the bargain contracted for, i.e., producing Paul Rich to perform at plaintiffs wedding reception (see, e.g., Walker v Winks, 168 Misc 2d 265, 269 [1996] [disclaimers void]; Oxman v Amoroso, supra [refund policy null and void]).
Negligent Misrepresentation
The defendant promised and guaranteed that Paul Rich would sing at plaintiffs wedding reception. The plaintiff relied upon this representation, signed defendant’s contract and paid defendant $3,275. This amounts to negligent misrepresentation for which defendant is liable (see, e.g., White v Guarente, 43 NY2d 356, 362-363 [1977] [“a negligent statement may be the basis for recovery of damages, where there is carelessness in imparting words upon which others were expected to rely and upon which they did act”]; Pellegrini v Landmark Travel Group, supra, 165 Misc 2d, at 594-595 [travel agent misrepresented tour tickets as being refundable when they were not]; C.T.V., Inc. v Curlen, NYLJ, Dec. 3, 1997, at 35, col 1 [Yonkers City Ct] [cancellation rights misrepresented]).
All of the elements of negligent misrepresentation are met herein including the existence of a special relationship between the plaintiff and defendant. The defendant is liable for all appropriate damages arising from its negligent misrepresentation.
Violation of General Business Law § 349
General Business Law § 349 is a broad, remedial statute (see, e.g., Oswego Laborer’s Local 214 Pension Fund v Marine Midland Bank, 85 NY2d 20 [1995]; see also, Note, New York Creates A Private Right of Action To Combat Consumer Fraud: Caveat Venditor, op. cit.) directed towards giving consumers a powerful remedy. The elements of a violation of General Business Law § 349 are (1) proof that the practice was deceptive or misleading in a material respect and (2) proof that plaintiff was injured (see, Givens, Practice Commentaries, McKinney’s Cons Laws of NY, Book 19, General Business Law § 349, at *78 565; McDonald v North Shore Yacht Sales, 134 Misc 2d 910 [1987]; Geismar v Abraham & Straus, 109 Misc 2d 495 [1981]). There is no requirement under General Business Law § 349 that plaintiff prove that defendant’s practices and acts were intentional, fraudulent or even reckless. Nor does plaintiff have to prove reliance upon defendant’s deceptive practices.
The defendant has violated General Business Law § 349 in the following respects:
First, the defendant’s misrepresentation that it would produce Paul Rich to sing at plaintiffs wedding was false, misleading and deceptive (see, e.g., Rossi v 21st Century Concepts, 162 Misc 2d 932 [1994], supra [misrepresented pots and pans]; BNI N. Y. v DeSanto, 177 Misc 2d 9 [1998] [misrepresented referral organization]; C.T.V., Inc. v Curlen, supra [misrepresented “Beat The System” certificates]).
Second, the defendant’s guarantee that it would produce Paul Rich at plaintiffs wedding reception was false, misleading and deceptive (see, e.g., Giarratano v Midas Muffler, 166 Misc 2d 390 [1995] [Midas warranty certificate misleading and deceptive]).
The defendant’s misleading and deceptive practices in marketing its services to the general public “have a broad impact on consumers at large” (New York Univ. v Continental Ins. Co., 87 NY2d 308, 320 [1995]).
DAMAGES
The court awards the following damages to the plaintiff.
First, damages will include one half of the full contract price of $3,275 or $1,637.50 (see, Sagnia-Blythe v Gamblin, 160 Misc 2d 930, supra; Deitsch v The Music Co., supra, 6 Ohio Misc 2d 6, 453 NE2d, at 1304; Garther v Tipery Studios, 334 So 2d, supra, at 761; Mitchell v Shreveport Laundries, 61 So 2d, supra, at 540).
Second, damages will also include $500 for the disappointment, humiliation and annoyance suffered by the plaintiff (see, Deitsch v The Music Co., supra [$750]; Lewis v Holmes, 109 La 1030, 34 So 66, 68 [1903] [$575]; Garther v Tipery Studios, supra [$125]; Mitchell v Shreveport Laundries, supra [$350]; Kupferman v Pakistan Intl. Airlines, 108 Misc 2d 485 [1981] [$1,355.34]; Yochim v Mount Hope Cemetery Assn., 163 Misc 2d 1054, 1058-1059 [1994] [$300]).
Third, pursuant to General Business Law § 349 (h) the court finds that defendant wilfully violated General Business Law *79 § 349. Although the court would like to treble plaintiffs actual damages of $2,137.50, this amount exceeds the maximum $1,000 permissible (see, Hart v Moore, 155 Misc 2d 203 [1992]).

. Besides wedding showcases prospective brides may attend other bridal expositions featuring household items. (See, e.g., Rossi v 21st Century Concepts, 162 Misc 2d 932, 933 [1994] [“The plaintiff, soon to be a new bride, attended the Great Bridal Expo. The Bridal Expo featured exhibitors displaying a broad spectrum of goods and services, typically purchased by recently engaged young women eager to possess all that a modern American bride should possess * * * Royal Prestige * * * displayed a variety of knives, china, glassware, water filters and cookware”].)

. For a delicious spoof of a wedding reception see the movie “The Wedding Singer” as discussed in Goldschmidt, ‘The Wedding Singer’ Is Genially Goofy (NYLJ, Feb. 13, 1998, at 5, cols 2, 3 [“In the best scene, Robbie, still reeling from being dumped, sabotages a gig by snarling the J. Geils song Love Stinks’ at the bewildered happy couple, and then gets punched out by the bride’s outraged father”]).

. Esposito-Hilder v SFX Broadcasting (171 Misc 2d 286, 288 [1996], affd 236 AD2d 186 [3d Dept 1997], supra [“During the Ugliest Bride Contest’, the (disc jockeys) referred to the bridal pictures appearing in the local newspapers published weekly, and invited their listening audience to vote for the Ugliest Bride’ of the brides so pictured”]).